IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CRYSTAL G. GORDON,

              Plaintiff,

    vs.                              Civil Action 2:14-cv-213
                                      Judge Graham
                                      Magistrate Judge King

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

## REPORT AND RECOMMENDATION

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for supplemental security income and for Medicare coverage as a Medicare-Qualified Government Employee. This matter is before the Court for consideration of *Plaintiff Crystal G. Gordon's Statement of Specific Errors* ("*Statement of Errors*"), Doc. No. 15, the Commissioner's *Memorandum in Opposition*, Doc. No. 18, and *Plaintiff's Reply*, Doc. No. 19.

Plaintiff Crystal G. Gordon filed her applications for benefits in December 2010, alleging that she has been disabled since November 2, 2008. *PAGEID* 41, 196-205. The claims were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

An administrative hearing was held on August 16, 2012, at which plaintiff, represented by counsel, appeared and testified, as did George W. Coleman III, M.R.C., who testified as a vocational expert.

*PAGEID* 41, 57.  In a decision dated September 25, 2012, the administrative law judge concluded that plaintiff was not disabled from November 2, 2008, through the date of the administrative decision.  *PAGEID* 49-50.  That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on January 8, 2014.  *PAGEID* 30.

Plaintiff was 31 years of age on the date of the administrative decision.  *See PAGEID* 50, 198.  Plaintiff was last insured under the Social Security Act with respect to Medicare Coverage as a Medicare-Qualified Government Employee on June 30, 2013.  *PAGEID* 43.  Plaintiff has never had sufficient quarters of earning to be insured for a period of disability or disability insurance benefits.  *Id.*  Plaintiff has past relevant work as an industrial cleaner, school janitor, and file clerk.  *PAGEID* 49.  She has not engaged in substantial gainful activity since her alleged date of onset of disability.  *PAGEID* 43.

**II.  Medical Evidence[1]**

Plaintiff treated with Jeri A. O'Donnell, M.A., L.P.C.C., and Michelle L. Winner, D.O., at Doctors Hospital Family Practice for depression and anxiety from October 2010 through March 2011.  *PAGEID* 370-402.  Plaintiff was diagnosed with depression and anxiety and received counseling and medication management.  *Id.*

---

[1] The Court's discussion of the medical evidence is limited to the issues raised in plaintiff's *Statement of Errors*, which challenges only the findings related to plaintiff's mental impairments.

Plaintiff began treating with Murali Chitluri, M.D., on April 8, 2011, at Access Ohio. *PAGEID* 418-21. Plaintiff reported being depressed and anxious; she hates her life and herself. She is angry every day and throws things when angry. *PAGEID* 418-21. Clinical examination revealed a hostile, mistrustful, preoccupied, and agitated demeanor. Her mood was depressed, anxious, and angry; her affect was inappropriate and labile; and her behavior was agitated, impulsive, hyperactive, restless, and withdrawn. *PAGEID* 419-20. Dr. Chitluri assigned a global assessment of functioning score ("GAF") of 40[2] and diagnosed bipolar affective disorder and panic disorder with agoraphobia. *PAGEID* 420. Dr. Chitluri treated plaintiff on three occasions between May and June 2011. *PAGEID* 416-17, 480-81, 482-83.

On August 30, 2011, Dr. Chitluri completed a mental impairment questionnaire. *PAGEID* 527-30. According to Dr. Chitluri, plaintiff had extreme functional limitations in activities of daily living, in maintaining social functioning and in the areas of concentration, persistence, or pace. *PAGEID* 529. Plaintiff experienced one or two repeated episodes of decompensation within a 12 month period, each of at least two weeks' duration. *Id*. Plaintiff would have difficulty working at a regular job on a sustained basis because she "has been

---

[2]

"The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning . . . ."

*Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 436 n.1 (6th Cir. 2012).

terminated approximately thirteen times over a two year period due to her mental health status." *PAGEID* 530.  Dr. Chitluri opined that plaintiff's medication caused dizziness, drowsiness, restlessness, weakness, agitation, fatigue, irritability, and impaired coordination. *PAGEID* 527.  Plaintiff's impairments or treatment would cause her to be absent from work more than four days per month.  *PAGEID* 530.  Dr. Chitluri indicated that these opinions were based on the following clinical findings: "depressed, anxious, anger, restless, memory and withdrawn." *PAGEID* 527.

Plaintiff continued to treat with Dr. Chitluri after August 2011. *PAGEID* 556-57 (October 2011), 587-88 (March 2012), 618-19 (May 2012), 585-86 (June 2012).

Plaintiff also treated with John Wilson, L.I.S.W., A.C.S.W., C.S.A.C., at Access Ohio.  During a mental status exam performed on July 14, 2011, plaintiff presented as cooperative, moderately depressed, mildly guarded and well groomed. She demonstrated an average demeanor, eye contact, and activity. Her affect was moderately flat; her thought process was logical. *PAGEID* 467.  Mr. Wilson diagnosed posttraumatic stress disorder, chronic, dysthymic disorder and intermittent explosive disorder; he assigned a GAF of 51. *PAGEID* 465.

Mr. Wilson completed a mental impairment questionnaire on September 13, 2011. *PAGEID* 532-35.  He reported one-hour psychotherapy sessions on a weekly basis.  *PAGEID* 532.  He also reported severe symptoms of post-traumatic stress disorder, based on

weekly testing. *Id.*  According to Mr. Wilson, plaintiff had extreme functional limitations in activities of daily living; maintaining social functioning; and concentration, persistence, or pace. *PAGEID* 534.  He opined that plaintiff had a complete inability to function independently outside her home and that she would likely miss more than four days of work per month due to her symptoms. *PAGEID* 535. However, her prognosis was "good." *Id.*

Plaintiff was consultatively examined by psychologist Lari Meyer, Ph.D., at the request of the state agency on June 15, 2011. *PAGEID* 426-39.  Plaintiff reported that she cries everyday, does not want to get out of bed "a lot of days," has trouble leaving her house, and has violet anger outbursts four or five times per week. *PAGEID* 428, 432. She awakens between 5:30 and 6:00 a.m. and goes to bed around 8:00 p.m. *PAGEID* 431.  She has no hobbies, does not exercise, picks up around the house two to three times per week, eats one to two meals a day, and bathes/changes clothes every day. *PAGEID* 431.  Plaintiff reported suicidal ideation "all the time, everyday" and homicidal ideation when she is mad; she attempted suicide five or six times. *PAGEID* 432.  Plaintiff also reported difficulty concentrating, being forgetful, difficulty sleeping and only getting five or six hours of sleep per night, having a "bad" energy level, and having to force herself to eat. *PAGEID* 433.  Plaintiff also reported occasional auditory hallucinations. *Id.*

Upon examination, plaintiff demonstrated appropriate eye contact. Her presentation was within the normal range without any unusual or

aberrant behaviors. *PAGEID* 432.  Cognitively, plaintiff was oriented times three and her thought processes were "flowing, relevant, goal-directed and coherent." *PAGEID* 434.  She showed no motoric or autonomic signs of anxiety, her associations were normal, and there was no unusual or tangential/circumstantial thinking. *Id*.  Insight and judgment were adequate. *Id*.

Dr. Meyer assigned a GAF of 55 and diagnosed a mood disorder NOS. *PAGEID* 437.  According to Dr. Meyer, testing suggested the following: "immediate attention adequate for simple information and severely impaired for more complex information, short-term memory intact, long-term memory moderately impaired but recall is facilitated by multiple choice, general fund of knowledge mildly impaired, abstraction moderately impaired, arithmetic calculation moderately impaired, and sustained concentration mildly impaired." *PAGEID* 436.  Plaintiff demonstrated decreased task persistence, tended to give up easily during tasks, and began to cry during the arithmetic calculations portion of the exam. *Id*. Dr. Meyer opined that plaintiff "is able to understand, remember, and follow instructions in order to complete a basic work task." *PAGEID* 437.  Plaintiff "would be able to maintain attention in order to complete simple tasks, but would demonstrate difficulty in maintaining attention for more complex tasks or in maintaining sustained concentration over time in order to complete work tasks." *PAGEID* 438.  Plaintiff could "relate to others, including coworkers and supervisors, on a time-limited one-on-one basis, but would demonstrate impairments, including increased

6

affective instability with both verbal and physical anger outbursts, if required to relate to multiple people at once or if required to relate to others over a sustained period of time." *Id.* According to Dr. Meyer, plaintiff

> would be able to respond appropriately to simple and repetitive work tasks only. She would demonstrate impairments, including increased affective instability with verbal and physical anger outbursts, as stressful work situations arise. In addition, as stressful work situations arise, she would demonstrate decreased task persistence, and thereby fail to complete work tasks. She would also demonstrate decreased motivation and increased isolation as stressful work situations arise, and this would manifest as failure to complete work tasks and increased absenteeism from work.

*Id.*

Katherine Fernandez, Psy.D., reviewed the record and completed a mental residual functional capacity assessment on August 3, 2011. *PAGEID* 89-91. Dr. Fernandez opined that plaintiff was moderately limited in her ability to (1) understand and remember detailed instructions, (2) carry out detailed instructions, (3) maintain attention and concentration for extended periods, (4) work in coordination with or in proximity to others without being distracted by them, (5) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (6) interact appropriately with the general public, (7) accept instructions and respond appropriately to criticism from supervisors, (8) get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and (9) respond appropriately

to changes in the work setting. *PAGEID* 90-91. Plaintiff can understand and remember "moderately complex routine instructions," *PAGEID* 90, and can sustain attention, concentration, persistence and pace "for moderately complex routine tasks in a relaxed setting." *PAGEID* 90. She can "respond appropriately to simple and moderately complex repetitive work tasks only, due to affective instability." *PAGEID* 91. Dr. Fernandez further opined that plaintiff "is able to relate to others, including coworkers and supervisors, on a time-limited one-on-one basis, but would demonstrate impairment if required to relate to multiple people at once, or if required to relate to others over a sustained period of time." *Id*.

Kristen Haskins, Psy.D., reviewed the record and, on November 3, 2011, affirmed Dr. Fernandez's assessment. *PAGEID* 115-17.

## III. Administrative Decision

The administrative law judge found that plaintiff's severe impairments consist of affective, anxiety, and personality-related disorders. *Id.* The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the residual functional capacity ("RFC") to "perform a full range of work at all exertional levels but, from a mental standpoint, she is limited to simple, repetitive, and some moderately complex tasks with occasional contact with coworkers and supervisors and no direct public contact." *PAGEID* 44-45. Relying on the testimony of the vocational expert, the administrative law judge found that this RFC does not preclude the performance of plaintiff's

past relevant work as an industrial cleaner, school janitor, and file clerk. *PAGEID* 49. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from November 2, 2008, through the date of the administrative decision. *PAGEID* 49-50.

## IV. Discussion

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d

1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

Plaintiff argues that the administrative law judge erred in evaluating the medical opinions of record. Plaintiff argues, first, that the administrative law judge erred in failing to grant controlling weight to Dr. Chitluri's opinion, failing to articulate what weight was assigned to Dr. Chitluri's opinion, and in failing to provide good reasons for discounting that opinion. *Statement of Errors*, pp. 9-13.

The opinion of a treating provider must be given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). Even if the opinion of a treating provider is not entitled to controlling weight, an administrative law judge is nevertheless required to evaluate the opinion by considering such factors as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the extent to which the opinion is supported by the evidence, and the consistency of the opinion with the record as a whole. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Moreover, an administrative law judge must provide "good reasons" for discounting the opinion of a treating provider, *i.e.*,

reasons that are "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).  This special treatment afforded the opinions of treating providers recognizes that

> "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Wilson,* 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)).

Dr. Chitluri first saw plaintiff on April 8, 2011, and treated her on at least three occasions in May and June 2011.  *PAGEID* 416-17, 418-21, 480-81, 482-83.  On August 30, 2011, Dr. Chitluri opined that plaintiff had extreme functional limitations in activities of daily living, maintaining social functioning and concentration, persistence, or pace.  *PAGEID* 527-30.  According to Dr. Chitluri, plaintiff would have difficulty working at a regular job on a sustained basis because she "has been terminated approximately thirteen times over a two year period due to her mental health status." *PAGEID* 530.  Dr. Chitluri opined that plaintiff's medication caused dizziness, drowsiness, restlessness, weakness, agitation, fatigue, irritability, and impaired coordination.  *PAGEID* 527. Plaintiff's impairments or treatment would cause her to be absent from work more than four days per month. *PAGEID* 530.  Dr. Chitluri based this opinion on the following clinical

findings: "depressed, anxious, anger, restless, memory and withdrawn."
*PAGEID* 527.

The administrative law judge characterized Dr. Chitluri as a treating psychiatrist and, in evaluating whether plaintiff's impairments met or medically equaled a listed impairment, noted the following:

> Psychiatrist Murali Chitluri, M.D., opined that the claimant had 'extreme' limitations in the functional domains (Exhibit 22F), but, as Dr. Meyer's independent, thorough evaluation results show, the claimant's actual activities and functioning do not support the existence of more than 'moderate' limitation. . . . Dr. Chitluri opined that the claimant could not function outside a highly supportive living arrangement (Exhibit 22F), but that assessment is inconsistent with the medical evidence of record, as summarized below.

*PAGEID* 45.

In determining plaintiff's RFC, the administrative law judge considered the opinions of both Dr. Chitluri and Mr. Wilson as follows:

> In August 2011, treating psychiatrist Dr. Chitluri, with Access Ohio, opined that the claimant had extreme mental functional limitations, could not function outside a highly supportive living arrangement, and would be absent from work more than four days per month (Exhibit 22F). The claimant's social worker, also with Access Ohio, indicated a similar assessment, though the social worker indicated a complete inability of the claimant to function independently outside of her home (Exhibit 23F). However, Dr. Meyer's independent evaluation indicated that the claimant's functioning was only moderately impaired. I do not find that treatment notes support marked or extreme mental work-related limitations. Furthermore, Dr. Chitluri's and the social worker's assessments are not accompanied by much objective findings and appear to be based significantly on the subjective report of the claimant, who is not found to be entirely credible. There is little objective evidence to support her testimony

regarding the frequency and severity of her emotional symptoms.

*PAGEID* 49.

The administrative law judge did not violate the treating physician rule in evaluating Dr. Chitluri's opinion. The administrative law judge discounted Dr. Chitluri's opinion in favor of Dr. Meyer's opinion because Dr. Chitluri's opinion was inconsistent with Dr. Meyer's evaluation and the medical evidence of record. Plaintiff's arguments to the contrary notwithstanding, a formulaic recitation of factors is not required. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused."). Moreover, the administrative law judge's reasons for discounting Dr. Chitluri's opinion are supported by substantial evidence. Notably, Dr. Chitluri's treatment notes contain relatively few objective findings to support such extreme limitations of functioning and extreme side effects from medication. It is also apparent that Dr. Chitluri's opinion is based, at least in part, on plaintiff's own reported symptomatology. It is true that, as plaintiff argues, a psychological evaluation is often dependent on the subjective presentation of the patient. *See Winning v. Comm'r of Soc. Sec.*, 661 F. Supp. 2d 807, 821 (N.D. Ohio 2009). However, it is not improper for an administrative law judge to consider whether a medical opinion is dependent on the claimant's reports of symptoms and limitations,

13

especially where, as here, the administrative law judge also finds that the claimant's subjective symptoms and reported limitations are not entirely credible.[3]  *See PAGEID* 47-49.  Plaintiff contends that the administrative law judge mis-read Dr. Chitluri's opinion and argues that the opinion was actually consistent with Dr. Meyer's opinion. For the reasons discussed *infra*, the Court finds this argument unavailing.

Plaintiff next argues that the administrative law judge erred in evaluating the opinion of plaintiff's social worker, Mr. Wilson. *Statement of Errors*, pp. 17-20.  Plaintiff argues that the administrative law judge failed to properly describe the weight assigned to Mr. Wilson's opinion and failed to thoroughly analyze Mr. Wilson's treatment notes and opinion.  *Id*.

Mr. Wilson completed a mental impairment questionnaire on September 13, 2011.  *PAGEID* 532-35.  Mr. Wilson opined that plaintiff had extreme functional limitations in activities of daily living, in maintaining social functioning and in the areas of concentration, persistence, or pace.  *PAGEID* 534.  Although plaintiff was reported as suffering a complete inability to function independently outside her home and that she would likely miss more than four days of work per month because of her symptoms, Mr. Wilson nevertheless characterized plaintiff's prognosis as "good." *PAGEID* 535.

---

[3]  Plaintiff does not challenge the administrative law judge's credibility determination.

14

As a licensed social worker, Mr. Wilson is categorized as an "other source," rather than an "acceptable medical source."  20 C.F.R. §§ 404.1513(d)(3); 416.913(d)(3).  Administrative law judges have the "discretion to determine the proper weight to accord opinions from 'other sources.'"  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997)).  Evidence from other sources may be considered "to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work."  20 C.F.R. §§ 404.1513(d)(1); 416.913(d)(1).  Among the factors to be considered in evaluating the opinions of these "other sources" are the length of time and frequency of treatment, consistency with other evidence, the degree to which the source presents relevant evidence to support the opinion, how well the opinion is explained, whether the source has a special expertise, and any other factor supporting or refuting the opinion.  SSR 06-03p, 2006 WL 2329939, at *4-5 (Aug. 9, 2006).  An administrative law judge need not weigh all the factors in every case; the evaluation depends on the particular facts in each case.  *See id.* at *5.  However, the administrative law judge "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning."  *Id.* at *6.

As noted *supra*, the administrative law judge found that Mr. Wilson's assessment was similar to that of Dr. Chitluri in that both

found extreme limitations of function.  *PAGEID* 49.  Mr. Wilson also
"indicated a complete inability . . . to function independently
outside of her home."  *Id*.  The administrative law judge discounted
Mr. Wilson's opinion in favor of Dr. Meyer's opinion for the same
reasons that he discounted Dr. Chitluri's opinion.  For the reasons
discussed *supra*, the administrative law judge committed no error in
this regard.  The Court also notes that, although Mr. Wilson's opinion
indicates that he treated plaintiff on a weekly basis, his treatment
records consist of a single assessment dated July 14, 2011.  *PAGEID*
543-54.  Mr. Wilson also indicated that plaintiff responds well to
therapy and had no reported side effects from her medication. Mr.
Wilson relied, at least in part, on plaintiff's reported symptomology
in forming his opinion.  *See PAGEID* 532-33.

Plaintiff next argues that the administrative law judge erred in
evaluating Dr. Meyer's opinion.  *Statement of Errors*, pp. 13-17.
Plaintiff specifically argues that the administrative law judge erred
by failing to specify the weight assigned Dr. Meyer's opinion and by
failing to consider appropriate factors in evaluating Dr. Meyer's
opinion.  *Id*. at pp. 14-15.  Plaintiff also contends that Dr. Meyer's
opinion is consistent with that of Dr. Chitluri and disagrees that Dr.
Meyer opined that plaintiff could perform moderate tasks.  *Id*. at p.
16.

As a one-time consultative psychological examiner, Dr. Meyer is
properly classified as a nontreating source.  *See* 20 C.F.R. §§
404.1502, 416.902 ("Nontreating source means a physician,

psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant].”).  With regard to nontreating sources, the agency will simply “give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined” the claimant.  *Id.* (quoting 20 C.F.R. § 404.1527(d)(1)).  In determining the weight to be given the opinion of a nontreating source, an administrative law judge should consider such factors as “the evidence that the physician offered in support of h[is] opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in h[is] specialty.” *Ealy v. Commissioner of Social Sec.,* 594 F.3d 504, 514 (6th Cir. 2010)(citing 20 C.F.R. § 404.1527(d)).

Plaintiff was examined by Dr. Meyer on June 15, 2011.  *PAGEID* 426-39.  Dr. Meyer assigned a GAF of 55 and diagnosed mood disorder NOS.  *PAGEID* 437.  Dr. Meyer opined the following with regard to plaintiff’s mental status:

> [I]mmediate attention adequate for simple information and severely impaired for more complex information, short-term memory intact, long-term memory moderately impaired but recall is facilitated by multiple choice, general fund of knowledge mildly impaired, abstraction moderately impaired, arithmetic calculation moderately impaired, and sustained concentration mildly impaired.

*PAGEID* 436.  Dr. Meyer noted that plaintiff demonstrated decreased task persistence, tended to give up easily during tasks, and began to cry during the arithmetic calculations portion of the exam.  *Id*. According to Dr. Meyer, plaintiff “is able to understand, remember,

and follow instructions in order to complete a basic work task."
*PAGEID* 437.  With regard to plaintiff's ability to maintain attention,
concentration, persistence, and pace sufficient to perform routine
tasks, plaintiff "would be able to maintain attention in order to
complete simple tasks, but would demonstrate difficulty in maintaining
attention for more complex tasks or in maintaining sustained
concentration over time in order to complete work tasks."  *PAGEID* 438.
Plaintiff could "relate to others, including coworkers and
supervisors, on a time-limited one-on-one basis, but would demonstrate
impairments, including increased affective instability with both
verbal and physical anger outbursts, if required to relate to multiple
people at once or if required to relate to others over a sustained
period of time."  *Id*.  Dr. Meyer further opined that, with regard to
plaintiff's abilities and limitations in responding appropriately to
work pressures in a work setting, plaintiff

> would be able to respond appropriately to simple and
> repetitive work tasks only.  She would demonstrate
> impairments, including increased affective instability with
> verbal and physical anger outbursts, as stressful work
> situations arise.  In addition, as stressful work
> situations arise, she would demonstrate decreased task
> persistence, and thereby fail to complete work tasks.  She
> would also demonstrate decreased motivation and increased
> isolation as stressful work situations arise, and this
> would manifest as failure to complete work tasks and
> increased absenteeism from work.

*Id*.

The administrative law judge summarized Dr. Meyer's evaluation as
follows:

> In June 2011, Dr. Meyer observed that the claimant was
> anxious but punctual, appropriately attired, adequately

18

groomed, fully oriented, flowing, relevant, goal-directed
and coherent (Exhibit 15F).  The claimant reported anger
outbursts, daily crying spells and daily suicidal ideation.
She reported that she arose between 5:30 and 6:00 a.m. and
retired to bed around 8:00 p.m.  She reported that she did
some housework two to three times a week, ate one to two
meals a day, drove a car, and bathed and changed clothes
every day.  Her social presentation was within the normal
range.  Dr. Meyer concluded that the claimant was able to
maintain attention and concentration throughout the
interview portion of the examination and was able to
respond to both simple and more complex questions in a
timely manner.  She did not demonstrate distractibility and
did not require redirection.  On the mental status
examination, she demonstrated adequate attention for simple
information, although she did demonstrate impairments in
attention for more complex information and in tasks
involving sustained concentration.  Dr. Meyer concluded
that the claimant could manage her own funds.

*PAGEID* 44.  The administrative law judge then expressly evaluated Dr.

Meyer's opinion:

> Dr. Meyer concluded that the claimant would be able to
> maintain attention in order to complete simple tasks, but
> would demonstrate difficulty in maintaining attention for
> more complex tasks or in maintaining sustained
> concentration over time in order to complete work tasks
> (Exhibit 15F).  Dr. Meyer concluded that the claimant would
> be able to relate to others, including coworkers and
> supervisors, on a time-limited, one-on-one basis, but would
> demonstrate impairments, including increased affective
> instability with both verbal and physical anger outbursts
> if required to relate to multiple people at once or if
> required to relate to others over a sustained period.  Dr.
> Meyer concluded that the claimant could respond
> appropriately to simple and repetitive work tasks but would
> have increased symptomatology as stressful work situations
> arose.
>
> The reviewing psychologists with the BDD, Katherine
> Fernandez, Psy.D., and Dr. Haskins, essentially adopted Dr.
> Meyer's conclusions and found that the claimant could
> respond appropriately to simple and moderately complex,
> repetitive tasks in a relaxed setting and relate to others
> on a time-limited, one-on-one basis (Exhibits 1A, 2A, 6A
> and 7A).
>
> Consistent with the assessments of Dr. Meyer, Dr. Fernandez

19

> and Dr. Haskin, I find that the claimant is limited to simple, repetitive, and some moderately complex tasks with minimal contact with coworkers and supervisors and no contact with the public.  Such limitations accommodate the concerns regarding stressful work and interactions with others.

*PAGEID* 48-49.

The administrative law judge relied on Dr. Meyer's opinion in forming his RFC assessment and was sufficiently specific as to the reasons for doing so.  It is also apparent that the administrative law judge considered the appropriate factors in evaluating Dr. Meyer's opinion.  The administrative law judge assigned greater weight to Dr. Meyer's opinion than Dr. Chitluri's and Mr. Wilson's opinions and found that Dr. Meyer's finding of only moderate functional impairments was more consistent with the medical evidence.  *PAGEID* 49. Plaintiff's arguments to the contrary notwithstanding, Dr. Meyer did not opine that plaintiff had extreme or marked limitations in her activities of daily living, in maintaining social functioning or in the areas of concentration, persistence, or pace.

The administrative law judge relied on the opinions of Dr. Meyer, Dr. Fernandez, and Dr. Haskins to find that plaintiff's RFC is "limited to simple, repetitive, and some moderately complex tasks with minimal contact with coworkers and supervisors and no contact with the public." *PAGEID* 49.  Dr. Fernandez and Dr. Haskins opined that plaintiff could perform moderately complex tasks.  *PAGEID* 90, 115-17. Moreover, the administrative law judge specifically found that these "limitations accommodate the concerns regarding stressful work and interactions with others." *Id*.  Plaintiff disagrees with the

20

administrative law judge's evaluation of the evidence, but this Court is not permitted to reweigh that evidence where, as here, the administrative law judge followed the proper procedures and his analysis is supported by substantial evidence.

Having carefully considered the entire record in this action, the Court concludes that the decision of the Commissioner is supported by substantial evidence.  It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See*, *e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976,

984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

October 30, 2014                          *s/Norah McCann King*
                                          Norah M<sup>c</sup>Cann King
                                    United States Magistrate Judge