IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Crystal G. Gordon,

      Plaintiff,

      v.                       Case No. 2:14-cv-213

Carolyn W. Colvin,
Acting Commissioner of
Social Security,

      Defendant.

<u>ORDER</u>

Plaintiff Crystal G. Gordon brings this action under 42 U.S.C. §§405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income and for Medicare coverage as a Medicare-Qualified Government Employee. The ALJ reviewed the medical evidence in the record and held a hearing, at which plaintiff, accompanied by counsel, and a vocational expert testified. In a decision dated September 22, 2012, the administrative law judge ("ALJ") found that plaintiff had severe impairments consisting of affective, anxiety and personality-related disorders. After considering the entire record, the ALJ found that plaintiff has the residual functional capacity to perform a full range of work at all exertional levels, but that, from a mental standpoint, she was limited to simple, repetitive, and some moderately complex tasks with occasional contact with coworkers and supervisors and no direct public contact. The ALJ found that plaintiff was capable of performing past relevant work as an industrial cleaner, school janitor and file clerk.

This matter is before the court for consideration of

plaintiff's November 13, 2014, objections (Doc. 21) in response to the October 30, 2014, report and recommendation of the magistrate judge (Doc. 20), recommending that the decision of the Commissioner be affirmed.

I. Standard of Review

If a party objects within the allotted time to a report and recommendation, the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also*, 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Put another way, a decision supported by substantial evidence is not subject to reversal, even if the reviewing court might arrive at a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). "Substantial evidence exists when 'a reasonable mind could accept the evidence as adequate to support a conclusion [and] . . . presupposes that there is a zone of choice within which the decision-makers can go either way, without interference by the courts.'" *Blakley v. Comm'r of*

*Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal citation omitted).  Even if supported by substantial evidence, however, "'a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

II. Objections

A. Sufficiency of Analysis of Treating Physician Opinion

Plaintiff first objects to the magistrate judge's rejection of her argument regarding the sufficiency of the ALJ's analysis of the opinions of treating physician Dr. Murali Chitluri, M.D., a psychiatrist.

The Commissioner has implemented regulations concerning how medical opinions, including those of a treating physician, are to be weighed.  The Commissioner has also issued a policy statement, Soc. Sec. Rul. 96-2p, 1996 WL 374188 (Soc. Sec. Admin. July 2, 1996), to guide an ALJ's assessment of a treating-source opinion.  Treating-source opinions must be given "controlling weight" if: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §404.1527(c)(2); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007).  The term "substantial evidence" denotes a quality of evidence amounting to "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the

3

medical opinion." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188 at *3.

Even if the opinion of the treating doctor does not meet these "controlling weight" criteria, this does not mean that the opinion must be rejected; rather, it "may still be entitled to deference and be adopted by the adjudicator." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188 at *1. If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on factors such as the length, frequency, nature, and extent of the treatment relationship, the treating source's area of specialty, and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence. 20 C.F.R. §404.1527(c)(2)-(6); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). The Commissioner is required to provide "good reasons" for the weight given to a treating-source opinion. §404.1527(c)(2), (d)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96-2p, 1996 WL 374188 at *5; *Rogers*, 486 F.3d at 242.

However, a formulaic recitation of factors is not required. *See Friend v. Comm'r of Soc. Sec.*, F.App'x 543, 551 (6th Cir. 2010). An ALJ may accomplish the goals of the "good reasons" requirement by indirectly attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record. *Coldiron v. Comm'r of Soc. Sec.*, 391 F.App'x 435, 439-41 (6th Cir. 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F.App'x 462, 470-72 (6th Cir. 2006). An ALJ need not discuss every piece

4

of evidence in the record for his decision to stand. *Thacker v. Comm'r of Soc. Sec.*, 99 F.App'x 661, 665 (6th Cir. 2004).

> While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that: "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.  Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts."

*Kornecky v. Comm'r of Soc. Sec.*, 167 F.App'x 496, 508 (6th Cir. 2006)(quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)(citations and internal quotation marks omitted)).  Further, an ALJ's failure to cite specific evidence does not indicate that it was not considered. *Simons v. Barnhart*, 114 F.App'x 727, 733 (6th Cir. 2004).

Dr. Murali Chitluri, M.D., plaintiff's treating psychologist, diagnosed plaintiff as having bipolar affective disorder and panic disorder with agoraphobia.  PAGEID 420.  On August 30, 2011, he completed a mental impairment questionnaire in which he opined that plaintiff had extreme functional limitations in activities of daily living, in maintaining social functioning and in areas of concentration, persistence or pace.  PAGEID 529.  His opinion was based on the following clinical findings: "depressed, anxious, anger, restless, memory and withdrawn." PAGEID 527.  He concluded that plaintiff would have difficulty working at a regular job on a sustained basis because she had been terminated approximately thirteen times over a two-year period due to her mental health status.  PAGEID 530.

Although he did not so specifically state, it is implicit in

the ALJ's decision that he did not give controlling weight to the opinion of Dr. Chitluri, nor did he completely reject Dr. Chitluri's evaluation.  In Section 3 of the decision, the ALJ concluded that plaintiff had severe impairments consisting of affective, anxiety and personality-related disorders.  As partial support for this conclusion, the ALJ noted that Dr. Chitluri, plaintiff's treating physician, had diagnosed bipolar disorder, depression and panic disorder.  PAGEID 43.  The ALJ later noted that "the claimant's severe affective, anxiety and personality-related disorders would result in significant mental work-related limitations."  PAGEID 47.

However, the ALJ did not accept Dr. Chitluri's opinion concerning the degree of plaintiff's limitations.  Rather, the ALJ primarily based his finding of plaintiff's residual functional capacity ("RFC") on the report of Dr. Lari Meyer, Ph.D., a psychologist who evaluated plaintiff at the request of the Ohio Bureau of Disability Determination ("BDD"), and the review of plaintiff's medical records by two BDD psychologists, Dr. Katherine Fernandez, Psy.D., and Dr. Kristen Haskins, Psy.D.  *See* PAGEID 49 (noting that plaintiff's RFC was consistent with the assessments of Drs. Meyer, Fernandez and Haskins).  The ALJ adequately addressed the distinctions between the opinions of these experts and Dr. Chitluri's opinion.  He noted Dr. Meyer's findings that plaintiff would be able to maintain attention in order to complete simple tasks, would be able to relate to others on a time-limited, one-on-one basis, and would respond appropriately to simple and repetitive work tasks.  PAGEID 48.  He also commented that Drs. Fernandez and Haskins "essentially adopted Dr. Meyer's conclusions[.]"  PAGEID

6

48.  The ALJ recognized that Dr. Chitluri had opined that plaintiff had extreme limitations in the functional domains.  However, the ALJ obviously relied on the reports of Dr. Haskins and Dr. Meyer, which, the ALJ concluded, showed only moderate limitations.  PAGEID 44-45.

The first reason given by the ALJ for not completely crediting Dr. Chitluri's opinion was the fact that it conflicted with Dr. Meyer's independent evaluation.  As a general matter, the opinions of a treating source, who has an ongoing treatment relationship with the claimant, and of an examining source, who physically examines the claimant but has no ongoing treatment relationship with the claimant, are entitled to more weight than the opinion of a non-examining source such as state agency consultants.  *Gayheart*, 710 F.3d at 375.  However, this is not a *per se* rule.  *See Norris v. Comm'r of Soc. Sec.*. 461 F.App'x 433, 438-40 (6th Cir. 2012)(upholding ALJ's decision to credit state-agency physicians' assessments over those of treating physicians); *see also* Soc. Sec. Rul. 96-6p, 1996 WL 374180 at *3 (Soc. Sec. Admin. July 2, 1996)("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").  In addition, although the ALJ must provide some explanation of the weight given to state agency opinions, *see* 20 C.F.R. §404.1527(f), the procedural requirement for providing "good reasons" for the weight given to a doctor's opinion only applies to treating sources.  *See Ealy*, 594 F.3d at 514; *Smith*, 482 F.3d at 876.

In explaining his decision to reject Dr. Chitluri's opinion

7

concerning the degree of plaintiff's mental limitations, the ALJ noted that Dr. Chitluri

> opined that the claimant had "extreme" limitations in the functional domains (Exhibit 22F), but, as Dr. Meyer's independent, thorough evaluation results show, the claimant's actual activities and functioning do not support the existence of more than "moderate" limitation.

PAGEID 45. The ALJ thoroughly discussed the report of Dr. Meyer. The ALJ noted Dr. Meyer's observations that plaintiff "was anxious but punctual, appropriately attired, adequately groomed, fully oriented, flowing, relevant, goal-directed and coherent." PAGEID 44. The ALJ further noted plaintiff's statements to Dr. Meyer that she gets up around 5:30 a.m to 6:00 a.m. and goes to bed around 8:00 p.m., does housework two to three times per week, eats one to two meals, drives a car, and bathes and changes clothes every day. PAGEID 44. The ALJ also summarized Dr. Meyer's findings that plaintiff's social presentations were within the normal range; that plaintiff was able to maintain attention and concentration throughout the interview portion of the examination and to respond to both simple and more complex questions in a timely manner; that she did not demonstrate distractibility or require redirection; and that she demonstrated adequate attention for simple information. PAGEID 44.

The ALJ further stated, "Dr. Chitluri opined that the claimant could not function outside a highly supportive living arrangement (Exhibit 22F), but that assessment is inconsistent with the medical evidence of record[.]" PAGEID 45. In support of this statement, the ALJ noted that plaintiff had "sought treatment on her own accord, which indicates an ability to manage her own affairs, seek out treatment, and arrange for such treatment." PAGEID 47. The

ALJ observed that plaintiff's subjective complaints "are disproportionate with and not supported by the objective and substantial evidence in the record" and that plaintiff's allegations of disability were "inconsistent with her overall medical regimen," which included "only conservative treatment." PAGEID 47. The ALJ referred to the report of Dr. Meyer concerning plaintiff's examination and plaintiff's reports of her daily activities discussed above. PAGEID 48. The ALJ also commented that in March, 2012, plaintiff had completed a questionnaire by stating that she was able to mow the grass, wash dishes, mop and vacuum the floor, drive a car, take and pick up her daughter from school, play board games or draw with her daughter, and grocery shop with her grandmother. The ALJ concluded that plaintiff's "level of activity is not consistent with the level and persistence of symptoms that she alleges." PAGEID 48.

Another reason given by the ALJ for discounting Dr. Chitluri's opinion is that it was based primarily on plaintiff's subjective complaints rather than objective evidence or testing. The ALJ stated,

> In August 2011, treating psychiatrist Dr. Chitluri, with Access Ohio, opined that the claimant had extreme mental functional limitations, could not function outside a highly supportive living arrangement, and would be absent from work more than four days per month (Exhibit 22F).... However, Dr. Meyer's independent evaluation indicated that the claimant's functioning was only moderately impaired. I do not find that [the] treatment notes support marked or extreme mental work-related limitations. Furthermore, Dr. Chitluri's ... assessments are not accompanied by much objective findings and appear to be based significantly on the subjective report of the claimant, who is not found to be entirely credible. There is little objective evidence to support her testimony regarding the frequency and severity of her

9

emotional symptoms.

PAGEID 49.

The ALJ gave several reasons for discrediting plaintiff's subjective complaints, noting that they were "not supported by the objective and substantial evidence in the record." PAGEID 47. Under Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4 (Soc. Sec. Admin. July 2, 1996), the ALJ can weigh a claimant's credibility in considering a claimant's statements as evidence bearing on the issue of disability. "[T]he extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements." SSR 96-7p, 1996 WL 374186 at *4 (Soc. Sec. Admin. July 2, 1996). In concluding that plaintiff's subjective complaints of disabling symptoms were not credible, the ALJ noted: 1) Exhibit 13F, which included a) a November 29, 2010, treatment note citing the "need to watch potential for manipulation" as plaintiff admitted to getting doctors in the past to write to keep her on a medical card; and b) a March 28, 2011, treatment note from an office visit indicating that plaintiff requested refills for medications she should not have run out of and that plaintiff had failed a urine drug screen and was not to be given controlled substances;[1] 2) Dr. Meyer's evaluation noting plaintiff's conflicting reports regarding the frequency of auditory hallucinations; 3) plaintiff's inconsistent testimony at the hearing; 4) plaintiff's inconsistent complaints concerning the side

---

[1] This exhibit also included another treatment note indicating that plaintiff was manipulative. Plaintiff stated she needed her pills and threatened that she would go home and hurt herself, then admitted that she had no intent of doing that. *See* PAGEID 345.

10

effects of her medications; and 5) the fact that plaintiff's level of activity, as detailed in Dr. Meyer's report and in the March, 2012, questionnaire, was not consistent with the level and persistence of the symptoms plaintiff alleged. PAGEID 47-48. Thus, the ALJ clearly explained why, in his view, the lack of credibility assigned to plaintiff's subjective reports of her symptoms also undermined the reliability of Dr. Chitluri's opinion which was largely based on those subjective reports.

The magistrate judge concluded that the ALJ did not violate the treating physician rule in evaluating Dr. Chitluri's opinion and in discounting Dr. Chitluri's opinion because it was inconsistent with Dr. Meyer's evaluation and the medical evidence of record. Doc. 20, p. 13. The magistrate judge found that the ALJ's reasons for discounting Dr. Chitluri's opinion "are supported by substantial evidence." Doc. 20, p. 13. The magistrate judge noted that "Dr. Chitluri's treatment notes contain relatively few objective findings to support such extreme limitations of functioning and extreme side effects from medication" and that Dr. Chitluri's opinion "is based, at least in part, on plaintiff's own reported symptomatology." Doc. 20, p. 13. The magistrate judge concluded that "it is not improper for an administrative law judge to consider whether a medical opinion is dependent on the claimant's reports of symptoms and limitations, especially where, as here, the administrative law judge also finds that the claimant's subjective symptoms and reported limitations are not entirely credible." Doc. 20, pp. 13-14. This court agrees. The ALJ's reasons for not giving controlling weight to Dr. Chitluri's opinion were sufficiently specific to permit review of the ALJ's

11

decision and were supported by substantial evidence in the case record.  This objection is denied.

B. Sufficiency of Analysis of Social Worker's Opinion

Plaintiff also argues that the ALJ failed to adequately address the opinion of John Wilson, a social worker at Access Ohio. Mr. Wilson performed a mental status exam on July 14, 2011, during which he diagnosed post-traumatic stress disorder, chronic dysthymic disorder and intermittent explosive disorder.  PAGEID 465.  He noted that plaintiff presented as cooperative, moderately depressed, mildly guarded and well groomed, demonstrated an average demeanor, eye contact, and activity, a moderately flat affect, and a logical thought process.  PAGEID 467.  Mr. Wilson completed a mental impairment questionnaire on September 13, 2011, in which he reported that plaintiff had extreme functional limitations in activities of daily living, maintaining social function, concentration, persistence or pace.  In his opinion, plaintiff had a complete inability to function independently outside her home and would likely miss more than four days of work per month due to her symptoms, although he characterized plaintiff's prognosis as "good."  PAGEID 535.

Only "acceptable medical sources" can provide medical opinions.  20 C.F.R. §§404.1527(a)(2) 416.927(a)(2).  Mr. Wilson, as a licensed social worker, is not an "acceptable medical source." Rather, his records fall under the category of evidence from "other sources" as defined in 20 C.F.R. §§404.1513(d) and 416.913(d).  *See Amer v. Comm'r of Soc. Sec.*, No. 1:13-cv-282, 2014 WL 1338115 at *9 (S.D. Ohio April 2, 2014), *adopted* 2014 WL 1670082 (S.D.Ohio April 24, 2014); SSR 06-3p, 2006 WL 2329939 at *2.  While the ALJ may use

evidence from "other sources," such information "cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose." SSR 06-3p, 2006 WL 2329939 at *2. However, information from "other sources" "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.* Because Mr. Wilson is not an "acceptable medical source," the ALJ was not required to provide good reasons for the weight given to his opinion under §404.1527(d)(2). *Mulkey v. Comm'r of Soc. Sec.*, No. 1:10-cv-466, 2011 WL 4528485 at *6 (W.D.Mich. June 14, 2011), *adopted* 2011 WL 4528479 (W.D.Mich. Sept. 29, 2011). However, the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." SSR 06-3p, 2006 WL 2329939 at *6.

In concluding that the ALJ did not err in discounting Mr. Wilson's opinion, the magistrate judge, Doc. 20, p. 16, noted that the ALJ discounted Mr. Wilson's opinion in favor of Dr. Meyer's opinion for the same reasons that he discounted Dr. Chitluri's opinion. The magistrate judge further observed that Mr. Wilson indicated that plaintiff responds well to therapy and reported no side effects from her medication, and he also relied, at least in part, on plaintiff's reports of her symptoms in reaching his conclusions.

The ALJ cited Mr. Wilson's July, 2011, evaluation in Section 3 of his analysis as support for the conclusion that plaintiff had severe mental impairments. PAGEID 43. After referring to Dr.

13

Chitluri's August, 2011, evaluation, the ALJ commented, "The claimant's social worker, also with Access Ohio, indicated a similar assessment, though the social worker indicated a complete inability of the claimant to function independently outside of her home."  PAGEID 43.

However, the ALJ also found that Mr. Wilson's evaluation suffered from the same defects as Dr. Chitluri's opinion.  After noting that Dr. Meyer's independent evaluation indicated only moderate impairment in plaintiff's functioning, the ALJ stated,

> I do not find that treatment notes support marked or extreme mental work-related limitations.  Furthermore, Dr. Chitluri's and the social worker's assessments are not accompanied by much objective findings and appear to be based significantly on the subjective report of the claimant, who is not found to be entirely credible. There is little objective evidence to support her testimony regarding the frequency and severity of her emotional symptoms.

PAGEID 49.  The ALJ's explanation as to why he was not placing more weight on the evaluation form completed by Mr. Wilson was sufficient to permit review, and was supported by substantial evidence.  *See Endriss v. Astrue*, 506 F.App'x 772, 778 (10th Cir. 2012)(rejecting argument that ALJ's discussion of physical therapists' evaluations was inadequate, noting that the limitations proposed by therapists were also proposed by two doctors whose opinions were afforded little weight by the ALJ).

C. Alleged Conflict Between RFC and Dr. Meyer's Opinion

In formulating plaintiff's RFC, the ALJ found that "claimant is limited to simple, repetitive, and some moderately complex tasks with minimal contact with coworkers and supervisors and no contact with the public.  Such limitations accommodate the concerns

14

regarding stressful work and interactions with others." PAGEID 49. Plaintiff takes issue with the inclusion of the language permitting "some moderately complex tasks," contending that the RFC and the opinions of Drs. Fernandez and Haskins conflict with and are not supported by Dr. Meyer's opinion. The magistrate judge rejected this argument, noting that "Dr. Meyer did not opine that plaintiff had extreme or marked limitations in her activities of daily living, in maintaining social functioning or in the areas of concentration, persistence or pace." Doc. 20, p. 20.

A claimant's RFC is the most that a claimant can do despite his or her limitations. 20 U.S.C. §404.1545(a)(1). The ALJ is charged with determining a claimant's RFC. 20 C.F.R. §§404.1527(e)(2) and 404.1546(c). In making that determination, the ALJ must evaluate all the medical evidence as well as the claimant's testimony. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. SSR 96-8p, 1996 WL 374184 at *7 (Soc. Sec. Admin. July 2, 1006). However, an ALJ need not discuss every piece of evidence in the record for his decision to stand. *Thacker*, 99 F.App'x at 665. In addition, the court is unaware of any authority which would require the language of the ALJ's RFC assessment to exactly mirror the language of the expert reports upon which the assessment is based.

In his decision, the ALJ noted that

Dr. Meyer concluded that the claimant was able to maintain attention and concentration throughout the interview portion of the examination and was able to respond to both simple and more complex questions in a timely manner. She did not demonstrate distractibility

15

and did not require redirection.  On the mental status examination, she demonstrated adequate attention for simple information, although she did demonstrate impairments in attention for more complex information and in tasks involving sustained concentration.

PAGEID 44.  The ALJ also observed that

Dr. Meyer concluded that the claimant would be able to maintain attention in order to complete simple tasks, but would demonstrate difficulty in maintaining attention for more complex tasks or in maintaining sustained concentration over time in order to complete work tasks....  Dr. Meyer concluded that the claimant could respond appropriately to simple and repetitive work tasks but would have increased symptomatology as stressful work situations arose.

PAGEID 48.  The ALJ found, based on Dr. Meyer's evaluation, that plaintiff's actual activities and functioning do not support the existence of more than moderate limitation.  PAGEID 45.  The ALJ then stated that Dr. Fernandez and Dr. Haskins "essentially adopted Dr. Meyer's conclusions and found that the claimant could respond appropriately to simple and moderately complex, repetitive tasks in a relaxed setting and relate to others on a time-limited, one-on-one basis[.]"  PAGEID 48.

The ALJ's reading of the expert reports is supported by the record.  In her report, Dr. Meyer noted that during the mental status testing portion of the evaluation, plaintiff's immediate attention was adequate for simple information and severely impaired for more complex information.  PAGEID 436.  However, in the functional assessment section of the report, Dr. Meyer stated that plaintiff was able to understand, remember, and follow verbal instructions during the examination, including multi-step instructions.  PAGEID 437.  Dr. Meyer also noted:

The claimant was able to maintain attention and

16

> concentration throughout the interview portion of the examination and <u>was able to respond to both simple and more complex questions in a timely manner.  She did not demonstrate distractability [sic] and did not require redirection</u>.  On the mental status examination, she demonstrated adequate attention for simple information, although she did demonstrate impairments in attention for more complex information and in tasks involving sustained concentration.  Therefore, she would be able to maintain attention in order to complete simple tasks, but would demonstrate difficulty in maintaining attention for more complex tasks or in maintaining sustained concentration over time in order to complete work tasks....  The claimant would be able to respond appropriately to simple and repetitive work tasks only.

PAGEID 438 (emphasis supplied).

Dr. Fernandez noted in her review that plaintiff's ability to understand and remember detailed instructions was moderately limited.  She also stated that although plaintiff demonstrated impairment in attention for more complex information and in tasks involving sustained concentration, plaintiff could understand moderately complex routine instructions and sustain attention for moderately complex routine tasks in a relaxed setting.  PAGEID 90. Dr. Haskins also concluded, based on her review of the record, that plaintiff's ability to understand and remember detailed instructions was moderately limited, and that although plaintiff demonstrated impairment in attention for more complex information, she could understand and remember moderately complex routine instructions.  PAGEID 127.

Although Dr. Fernandez and Dr. Haskins may not have used exactly the same language in their reviews that Dr. Meyer included in her report, the ALJ did not err in concluding that the reviews agreed in essence with the findings of Dr. Meyer.  In her functional assessment, Dr. Meyer did not specifically state that

plaintiff would be severely impaired in the area of moderately complex tasks under all circumstances. Rather, she observed that plaintiff was "able to respond to both simple and more complex questions" and was able to follow multi-step instructions, but that she would "demonstrate difficulty in maintaining attention for more complex tasks[.]" PAGEID 437-38. Dr. Meyer also noted that plaintiff would be able to relate to others, including co-workers and supervisors, on a one-to-one basis but would have difficulty if required to interact with more than one person, or in stressful work situations. PAGEID 348. Based on the totality of Dr. Meyer's evaluation, both Dr. Fernandez and Dr. Haskins concluded that plaintiff would be capable of moderately complex tasks that were "routine" and "in a relaxed setting." PAGEID 90, 127.

The ALJ was entitled to rely on the opinions of Dr. Fernandez and Dr. Haskins in formulating plaintiff's RFC. The ALJ also accurately summarized the findings of those experts as well as Dr. Meyer's report. The ALJ could reasonably conclude, based on the totality of the evidence, including these reports, that plaintiff was capable of "some moderately complex tasks" that are "repetitive" and that involve "minimal contact with coworkers and supervisors and no contact with the public." PAGEID 49. This objection is denied.

III. Conclusion

Having reviewed the record *de novo*, the court determines that there is substantial evidence supporting the ALJ's determination that plaintiff is not disabled, as defined in the Social Security Act. The court hereby adopts and affirms the magistrate judge's report and recommendation (Doc. 20). Plaintiff's objections (Doc.

18

21) are denied.  The Commissioner's decision is affirmed, and this action is dismissed.

Pursuant to sentence four of 42 U.S.C. § 405(g), the clerk shall enter final judgment affirming the decision of the Commissioner and dismissing this action.

It is so ordered.


Date: January 26, 2015          _____s/James L. Graham_____
                                James L. Graham
                                United States District Judge